## LEVI RICE, EX'R, v. AMANDA RUDD.

### [In Chancery.]

*Homestead. Widow.* R. L. s. 1894.

One cannot have a homestead in mere land; nor in land with no buildings but a barn on it; a dwelling-house, owned, used, or kept by the housekeeper as a home for himself and family, is the first essential of a homestead; thus, the defendant's husband, living with her in her house, and owning land contiguous to that of his wife, mortgaged the same without her joining in the deed. A barn was the only building on his land; which land he used in connection with his wife's house as a home for his family. On a foreclosure: *Held,* that the husband never had a homestead in his land; and, that, therefore, his widow could not hold one in it.

PETITION for foreclosure of two mortgages. Heard on pleadings and agreed statement, September Term, 1884. VEAZEY, Chancellor, decreed a foreclosure of both mortgages.

*J. C. Baker* and *C. L. Howe,* for the defendant.

The object of the homestead law is of a humane character, and should be applied to all cases within its equity and spirit. *True* v. *Morrill,* 28 Vt. 672; *McClary* v. *Bixby,* 36 Vt. 254; *Jewett* v. *Guyer,* 38 Vt. 209. In *West River Bank* v. *Gale,* 42 Vt. 27, it was held, that a shop with a water privilege, situated on the other side of the highway from the house, was a part of the homestead. The homestead has been held to attach to the interest of a tenant in common. *McClary* v. *Bixby, supra; Danforth Beatty,* 43 Vt. 138.

*See Whiteman* v. *Field,* 53 Vt. 554.   The homestead law applies to an equitable as well as to a legal ownership.   *Morgan* v. *Stearns,* 41 Vt. 398; *Doane* v. *Doane,* 46 Vt. 485.

Here is an outbuilding and lands directly across the highway from the dwelling-house of the family; and it is kept and used continuously in connection therewith, as a homestead.   *Bugbee* v. *Bemis,* 50 Vt. 216.

*W. C. Dunton* and *Edward Dana,* for the orators.

Under the statute—R. L. s. 1894—there cannot be any homestead without a *dwelling-house,* used or kept as a homestead.   *Mills* v. *Grant's Est.* 36 Vt. 269; *McClary* v. *Bixby,* Ib. 254; *Bugbee* v. *Bemis,* 50 Vt. 218; *Woodman* v. *Lane,* 7 N. H. 245; Bur. Law Dic.   On the decease of her husband the defendant was entitled to a homestead exemption in her own dwelling-house.   But one cannot have two homesteads at the same time.   *Goodall* v. *Boardman,* 53 Vt. 92.   The provisions of the statute cannot be extended by the court.   *Bugbee* v. *Bemis, supra.*

The opinion of the court was delivered by

WALKER, J.   The petition in this case was brought to foreclose two mortgages upon the premises described in the petition.   No defence is made to the first mortgage, which was executed by Ann Holton to H. C. Hubbard, March 28, 1866, before Eli A. Rudd purchased the premises, and which was upon the premises at the time of his purchase.

The only question raised upon the agreed statement of facts submitted, is, whether the defendant, Amanda Rudd, who is the widow of Eli A. Rudd, is entitled as such widow to have a homestead set out to her in the premises described in the petition as against the mortgage of the same premises executed by Eli A. Rudd in his life time, on the 20th day of November, 1871, to George Capron, of whose will the petitioner is the executor.

At the time of the execution of said mortgage the said Amanda was the lawful wife of said Eli, and did not sign or in any manner consent to the making of said mortgage ; and they then resided in a house situated upon the land of said Amanda in Middletown, consisting of about twenty acres of land with a house and barn thereon, and of the value of more than five hundred dollars. Some time prior to the date of said mortgage to Capron, Eli A. Rudd purchased the land described in said mortgage, which is situated directly across the highway from the house and lot of Mrs. Rudd, where Mr. and Mrs. Rudd then resided ; and the land so purchased was kept and used, and intended to be used, by him, when he purchased the same in connection with Mrs. Rudd's said house and lot, as a home for the family. When Mr. Rudd purchased his said lot of land, there was no dwelling-house or other building upon it, nor when he mortgaged the same to Capron as aforesaid. In the spring of 1871, Mr. Rudd commenced preparations for the erection of a barn on his lot, and intended to take down an old barn on Mrs. Rudd's land, and use it with other material in the erection of the barn on his lot. In June, 1871, he dug and walled up a cellar on his lot directly opposite Mrs. Rudd's house, for the purpose of setting his barn thereon. He also drew and piled on his lot several thousand feet of lumber to be used in the construction of said barn ; and said cellar and lumber were upon the premises at the time said mortgage was executed.

In the spring of 1872, after the execution of the mortgage, Rudd took down the barn upon his wife's land, and with the material from that and the lumber that was on this lot at the time of the execution of the mortgage, built on his lot the barn which he had before intended to erect. This barn and Mr. Rudd's lot have ever since been used in connection with Mrs. Rudd's house and lot on the opposite side of the highway, as part of the home place where the family

lived. The domestic animals and hay and produce of said two pieces of land have been kept in this barn since its construction in 1872; and there has been no other barn upon the lots. Mr. Rudd continued to use and occupy said barn and lot in connection with his wife's house and lot until his death in 1882; and since his death his said widow has used said two pieces of land and said house and barn in the same way. At the time said mortgage was given and from then to his death, Mr. Rudd did not own or have any interest in any land, excepting his said lot and barn, and his interest in his wife's land.

The homestead right is a right to be set out of the estate of the husband or head of the family, and is an exemption of so much of his estate as is included within it, not exceeding the value of $500, for the benefit of the widow and minor children. But the widow and minor children do not succeed to such a homestead right in the estate of the deceased housekeeper unless such homestead right had become attached to and created in the real estate of the housekeeper in his life time. If the housekeeper had no homestead right in his real estate that was exempt from attachment and levy of execution for his debts, then on his death no homestead right would vest in his widow and minor children. And in this case, Rudd's widow has no homestead right in the premises described in the petition as against the Capron mortgage thereon, executed November 20, 1871, unless at that time Rudd had a homestead right, which had become so attached to the premises in question that he could not convey the same in mortgage by his separate deed. If Rudd had a homestead right in the premises at that time, which was exempt from attachment or levy of execution on his debts, then the said mortgage was inoperative and void as against the widow's homestead right. If he did not have a homestead exempt in the premises at that time, then no homestead right vested in his widow on his decease, and the petitioner is entitled to

have the Capron mortgage foreclosed against the said Amanda.

Did Eli A. Rudd have a homestead in the premises described, at the time of the execution of said mortgage, which, on his death, vested in his said widow, Amanda ?

The answer to this question depends upon the requirements of the statute exempting a homestead and the application of the same to the agreed statement of facts.

The statute, defining a homestead at the time of the execution of the mortgage to Capron by Rudd, was the same as now, and is as follows:

"The homestead of a housekeeper or head of a family, consisting of a dwelling-house, outbuildings, and the land used in connection therewith, not exceeding five hundred dollars in value, and used or kept by such housekeeper or head of a family as a homestead, shall, together with the rents, issues, profits, and products thereof, be exempt from attachment and execution, except as hereinafter provided."

This statute definition necessarily implies a house owned and used or kept by the housekeeper as a dwelling-place or home for himself and family with a prescribed quantity of land on which the house is situated. It requires that the home, the abode, the castle, the residence of the family of the housekeeper, shall be upon the housekeeper's land, or upon land in which he has some legal or equitable interest or ownership.

The words of the statute, "consisting of a dwelling-house, outbuildings, and the land used in connection therewith, not exceeding five hundred dollars in value," make the dwelling-house the first essential of a homestead. When that exists, the right attaches and draws to it outbuildings and land on which the buildings stand, and which is used in connection therewith, sufficient to make the five hundred dollars value. Without the dwelling-house there is no homestead right established or created in the land to which the exemption can apply. A homestead is the place of the house or home,—that part of a man's landed prop-

erty which includes his dwelling-house, and is about or contiguous to it. It is the place where he surrounds himself with the insignia of home, and enjoys by right of ownership its immunities, privileges, and privacies. In *Mills* v. *Estate of Grant*, 36 Vt. 269, it was held, that "the object of the exemption is to create a charge upon specific premises, consisting of *a house and land,* for the support and maintenance of the wife and family of the housekeeper, not subject to be defeated by his separate conveyance or by attachment or levy of execution on his debts." To constitute a homestead within the protection of the exemption law, there must be a dwelling-house upon the land owned by the housekeeper, or one in process of erection, and actually used or set apart and kept for a home and an abiding place for the family.

There was no dwelling-house on Rudd's land mortgaged to Capron as aforesaid ; and he had no intention of erecting one thereon, or of making his actual home and abode upon it. He did not keep it for that purpose. He intended, at the time of making the mortgage, only to erect a barn upon the land to be used by him for the better enjoyment and improvement of his land and his wife's land ; and after the execution of the mortgage he carried out this' intention. The abode and home of himself and family was never upon this land, and it was not kept for that purpose.

The fact that Mr. Rudd's lot was contiguous to Mrs. Rudd's land, upon which the family resided, and was used with it as a part of the homestead place of the family, does not bring Rudd's land within the exemption of the statute. It was a separate parcel from Mrs. Rudd's. There was no tenancy in common in the ownership of the lots. The ownership of each was distinct from the other. The occupation of both lots by Rudd under such distinct and separate titles of ownership, constituted a homestead only of that parcel upon which the dwelling-house occupied as the home of the family stood ; and the exemption applies only

to the house and land connected with it in the same title of ownership.

Rudd and his wife elected to make the wife's dwelling-house their home, and made it by their use of it as such their homestead. While they thus occupied it with no intention of abandoning it as a home, and neither having any other house, Rudd did not have a homestead in his own land, on which there was no dwelling-house, and on which he did not reside, and did not intend to. Rudd had no homestead in his land at the time he executed the mortgage to Capron, nor at the time of his decease, which vested in his widow. It was not necessary that Rudd's wife should sign and acknowledge the mortgage in order to make it operative upon all his title and interest in the premises described; and hence the defendant, Amanda Rudd, the widow of Rudd, has no homestead right in the premises described in the petition as against the mortgage executed by said Rudd to George Capron.

The decree of the Court of Chancery, foreclosing both mortgages as prayed for in the petition, is affirmed, and cause remanded with mandate according to the above order.