## W. E. THORP *vs.* THOMAS W. THORP, et al.

October Term, 1897.

Present: ROSS, C. J., TAFT, ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Homestead—Conveyance by Husband.*

A husband owning a dwelling house and surrounding land and occupying the same as a home, may convey, free from the homestead right, a portion of such surrounding land, provided the land so conveyed is not, and has not been, used for any household or other purposes connected with the dwelling, although from its location capable of being so used, provided also he leave the house and adjoining lands which are then being so used, of ample value, both at the time of the conveyance and at the time when the homestead is to be set out, to give his widow the full homestead exemption.

So far as use or keeping is determinative of the location of the land used in connection with the homestead, the acts and intention of the husband are, by the terms of the statute, controlling.

PETITION to foreclose a mortgage. The cause came on for hearing upon the pleadings and master's report at the March Term, 1897, Chittenden County. *Munson,* Chancellor, rendered a *pro forma* decree in accordance with the petitioner's claim. The defendants appealed.

*J. J. Monahan* and *W. H. Bliss* for the petitioner.

*L. F. Wilbur* and *Elihu B. Taft* for the defendant Lovisa A. Thompson's estate.

It is immaterial whether all of the Wheeler purchase was actually used for household purposes. *West River Bank* v. *Gale,* 42 Vt. 27. The homestead was in the entire purchase. There was nothing to indicate any distinction between the different parts. The premises were acquired by a single purchase and were never separated, and the presumption is that the homestead was in the whole; and the homestead right of the wife continues until set out. *Harper* v. *Forbes,*

15 Cal. 202; *Cook* v. *McChristian*, 4 Cal. 23; *Stewart* v.
*Brand*, 23 Iowa 477; *Tidd* v. *Quinn*, 52 N. H. 341; *Norris*
v. *Moulton*, 34 N. H. 397; *Hubbell* v. *Canady*, 58 Ill. 425.

The husband cannot change the boundaries of his home-
stead by mortgaging a part of it.    *Goodrich* v. *Brown*, 63
Iowa 247.

Ross, C. J.   This is a petition for the foreclosure of a
mortgage.   The petition is in ordinary form and claims the
right to foreclose against all the defendants.   When the bill
was brought Lovisa A. Thompson was living and answered,
claiming that she had a homestead in the premises covered
by the mortgage, derived under the law through her late
husband, Homer Thompson, deceased.   She has since
deceased and is represented by the executor of her will.
The determinative question presented by the pleadings is,
whether she had a homestead in the premises, against the
mortgage, at the decease of her husband.   If she had such a
homestead the court should cause it to be set out by metes
and bounds, if it has not already been done in a manner
that binds the orator.   If she had no such right, then the
orator is entitled to foreclose his mortgage against her and
against her estate.   Other questions have been argued, but
these are the only questions raised under the pleadings, and
the only questions which we have considered.   The facts found
by the master, relative to whether Lovisa A. Thompson had
a homestead in the premises covered by the mortgage sought
to be foreclosed, are, mainly, the following.   In March,
1885, her husband, Homer Thompson, purchased the French
place, upon which there was a dwelling house and barn, for
his father and mother to live upon.   He then had a farm
where he resided with his wife and where their home then
was.   In March, 1886, he sold his farm, his wife joining in
the conveyance.   In April, 1887, he purchased the Wheeler
place, and in May began building the store covered by the
mortgage, on the southeasterly end of the lot.   This place

adjoined the French place on the southeast. Both places are of nearly the same width. There was a dwelling house on the Wheeler place. In September of that year Thompson and wife moved into the house on the Wheeler place and continued to reside there until June, 1892. While building the store, and all of the time they resided in the Wheeler house, Thompson used the barn on the French place to keep his team, a cow and some other stock. January 3, 1888, he executed the mortgage sought to be foreclosed to secure the payment of money which he had borrowed and used to build the store. He then owned the Wheeler place and the French place free from incumbrance. The mortgaged premises are, in the mortgage, described as bounded "on the west by my homestead." It is found that Thompson had never used the premises conveyed by the mortgage "for any household purposes, or any purpose connected with the home or dwelling," and that at the time of making the conveyance, "it was the intent of Homer Thompson to have his homestead in the Wheeler house and the adjacent lands of the Wheeler and French purchases not including the mortgaged premises." The Wheeler house and the lands adjacent, of the Wheeler and French purchases, not including the house on the French place occupied by the father and mother of Thompson, nor the lot and store covered by the mortgage, were, and have ever continued, of greater value than the homestead exemption. Since that time other buildings have been erected on these portions of the Wheeler and French purchases. When the mortgage was executed the upper story of the store was finished to be used, and was used, for a hall. In June, 1892, he changed it into a tenement, moved into it, and made it his home to the time of his death, in March, 1895. His wife, Lovisa A., did not join in the execution of the mortgage of the store and lot. The store stood only ten feet from the Wheeler house, and the lot covered by the mortgage came practically to the end of the house. These facts, for the first

time, in litigation regarding the homestead, bring for consideration whether a husband who owns lands surrounding the house which he occupies with his family for a home, which together with the house are of greater value than the homestead exemption, may select out and convey free from the homestead right, a portion of such surrounding land by his sole deed, provided the land so conveyed had not been, and was not then, used for any household purposes, or any purpose connected with the home or dwelling, although it was so located that it might be used for such purposes; and provided he then leaves the house and adjoining lands, then being used in connection with the dwelling for such purposes, then and at the time when the homestead is to be set out, of ample value to give his widow the full homestead exemption.

V. S. 2179 defines the homestead exemption. It is created for a housekeeper or head of a family. It consists of a dwelling house, outbuildings and land used in connection therewith, not exceeding five hundred dollars in value, used or kept by such housekeeper or head of a family as a homestead. It exists in the dwelling house and outbuildings if of the value of five hundred dollars, and if they fall short of that value the land used in connection with them must be added to make up the deficiency. *Pease, admr.,* v. *Shirlock,* 63 Vt. 622; *Hastie* v. *Kelley,* 57 Vt. 293.

The housekeeper or head of a family need not own the fee of the premises. It exists in his estate therein, either in an equitable estate or an estate in common. *Morgan* v. *Stearns,* 41 Vt. 398; *McClary* v. *Bixby,* 36 Vt. 254; *Danforth* v. *Beattie,* 43 Vt. 138; *Doane* v. *Doane,* 46 Vt. 485.

To constitute a homestead within the protection of the exemption law, there must be a dwelling owned by the housekeeper or head of a family, or one in process of erection, and actually used, or set apart and kept for a home and an abiding place for the family. *Rice* v. *Rudd,* 57 Vt. 6; *Woodbury* v. *Warren,* 67 Vt. 251. There must be

a present right to use or keep the premises for a home. *Bugbee* v. *Bemis*, 50 Vt. 216. Ownership and intention unaccompanied by use will not create the exemption. *Goodale* v. *Boardman*, 53 Vt. 92. Ownership and occupancy or use are the essential conditions of the existence of the right. *Morgan* v. *Stearns*, 41 Vt. 398. Whether the premises are so occupied, used or kept as to create a homestead exemption, is largely determined by the intention of the housekeeper or head of a family. *Whiteman* v. *Field*, 53 Vt. 554. The wife's right in such premises is inchoate during the husband's life and ripens into an absolute right on his decease. When the inchoate right once attaches in favor of the wife the husband cannot convey it by his sole deed, nor estop her from it by oral declarations. *Canfield* v. *Hard*, 58 Vt. 217. Whether the premises are so used or kept as to create the homestead is a fact to be established by the person claiming the right. *Russ and wife* v. *Henry's Estate*, 58 Vt. 388.

The exemption is of only five hundred dollars in value and starts in and from a dwelling house used or kept as a homestead. The statute does not, like the statutes of many states, require the homesteader to reduce to writing and place upon record a description of that portion of his estate thus used and kept which he claims for his homestead. It leaves its location and extent to be determined by the language of the statute in granting it. It was not intended to enable him to hold from his creditors more of his estate than five hundred dollars in value, and this must center in and about the dwelling house. When levied upon by a creditor, the statute provides for its severance from the estate by definite boundaries. It has not provided for a conveyance of the overplus by the sole deed of the husband. We think it does not mean to deprive him from selling or mortgaging the overplus, so long as he leaves the dwelling house, outbuildings and land used in connection therewith, of sufficient value to answer the demands of the statute

both at the time of the conveyance and at the time the homestead may become vested in his widow. The widow derives it through him, through his ownership and use or keeping. His use or keeping are characterized largely by his intention. All the ends and purposes of the exemption are met if he does convey some part of his estate which might have, but has not, been used as a part of his homestead, so long as he leaves the dwelling house, outbuildings and land used in connection therewith of sufficient value to give his widow a full homestead. So far as use, or keeping, is determinative of the location of the land used in connection therewith, the husband's acts and intention, by the terms of the statute, control. The master has found that Homer Thompson's intention and use of the land connected with the Wheeler house when he gave the mortgage sought to be foreclosed, fixed the homestead in land owned by him other than that covered by the mortgage. This enabled him to convey the store and lot by his sole deed. The orator has the right to foreclose the mortgage against the estate of Lovisa A. Thompson. We do not consider whether she may have a homestead in the husband's equity in these mortgaged premises, arising out of their occupancy of the second story of the store; nor whether he had abandoned his homestead in the Wheeler house; nor whether, if the homestead is in his equity in the store, debts contracted prior to the time he moved into the tenement in the store can be satisfied out of the homestead; nor how, nor where, her homestead should be set out. All these and other questions, discussed in the briefs, do not fall within the scope of the bill and answer, but are within the jurisdiction of the probate court administering on his estate.

*Decree reversed, and cause remanded with a mandate to the court of chancery to enter a general decree of foreclosure of the mortgage against all the defendants, limiting the time of redemption of each defendant as it may judge equitable.*