EDWARD P. LEE *v.* CHARLES C. FOLLENSBY AND CHARLES E. PECK.

October Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 21, 1913.

*Evidence—Secondary Evidence—Witnesses—Refreshing Memory —Privileged Communications—Expert Opinion—Dispositions in Perpetuam—Who May Use—Homestead—Extent— Tenancy in Common—Strangers to Title—Recovery—Invalid Deed—Record—Notice to Cotenant—Instructions— Invited Error—Sufficiency of Exceptions to Charge—Trespass—Pleading—Issues—Estoppel—Inconsistent Positions —Motion in Arrest—Misjoinder of Counts.*

Plaintiff having testified that he had a receipt from defendants, and that the receipt was referred to in a letter from him to defendants, which was received in evidence, and that a lost letter that plaintiff received from defendants in answer to his letter referred to the contents of his letter, a sufficient connection was shown between plaintiff's letter, the receipt, and defendant's letter to permit plaintiff to testify to the contents of the lost letter, as against the objection that he was not shown to be acquainted with defendants' signature.

Where plaintiff in testifying refreshed his memory from a letter he had written his counsel, and, when defendant's counsel asked to see the letter, plaintiff's counsel suggested the inclusion of confidential communications, the court properly limited the inspection by de-

fendants' counsel to the signature and the portion that plaintiff said he had used to refresh his memory.

Where an experienced lumberman testified that he had done much cutting in the vicinity, knew the roads and the distance over which the lumber was taken, knew that there was quite a hill on the farm, but had not been on the land where the lumber was cut, and another witness testified that he thought he knew where the lumber was cut, and that it was on the mountain across a certain pond, they were both qualified to testify to the stumpage value of the merchantable lumber of the kinds taken.

Where a witness in giving his opinion on the stumpage value of timber generally limited his answers to "lumber of good quality, lumber that was solid, and lumber that was sound and all right," his testimony was sufficiently confined to a definite grade of lumber.

Where a witness testified that he had estimated stumpage in a number of towns near the timber in question, and that he had special knowledge as to the value of stumpage, he was properly allowed to testify as to the value of the stumpage of the timber in question.

Where defendants are justifying a claimed trespass on the ground of a license from plaintiff, which he denies, they are not "claiming under" him within P. S. 1630, providing that a deposition taken *in perpetuam* may be used "by the person at whose request it was taken, or any person claiming under him," and cannot use such deposition taken at his request, as the "person claiming under" the party taking the deposition is one who stands in his place in respect of the controversy.

The owner of a homestead right, not set out, cannot license the cutting of timber on lands three-fourths of a mile from the dwelling-house and separated by a fence from the intervening pasture land, where there is but one dwelling-house on the farm, and this and the out-buildings were worth $2,000.

As the sole deed of one of four tenants in common of timber land, attempting to convey all the timber on a described portion of the land is inoperative against the other three, it was not color of title sufficient to connect the grantee with the title so as to prevent one of the three from recovering for the other two, as well as himself, in an action of trespass against the grantee for cutting the timber.

Where plaintiff did not offer in evidence a deposition taken at his request, and refused to allow plaintiff to offer it, the court properly instructed that the jury should not presume anything as to what was in the deposition, nor use the assertions of counsel as to its

contents, but that counsel might comment on the fact that plaintiff did not use the deposition, and that the only thing that could be presumed was that it would not, on the whole, be favorable to him.

Where defendant's pleas set up plaintiff as a tenant in common, an instruction that defendant admitted that plaintiff was a tenant in common was proper.

If an invalid deed can operate as a license it must be because of some authority back of the deed, and he who asserts that authority must prove it.

The record of a deed is constructive notice only to those who are bound to search for it, and a tenant in common is not bound to examine the records to see whether his cotenant has given a deed that could not be effective against the rights of the former, even as color of title, and so one relying on such a deed cannot claim that his acts in cutting the timber thereby conveyed charged such tenant with the general duty of inquiry.

Where the court charged that, if plaintiff knew of the sale of timber rights at the time it was made by his cotenant, or learned of it afterwards, and then permitted defendants to proceed under it, his silence would prevent a recovery, it was not necessary more fully to comply with a requested instruction as to an express approval of the sale.

Where the court charged that defendants had not introduced any evidence that a designated person had authority to sell defendants specified timber, to which defendants excepted, claiming the contrary, if there was any such evidence, the error was cured by a supplemental charge calling the attention of the jury to defendants' claim, and leaving it to them to recall the testimony and determine just what it was.

Where the court charged that a license to enter and cut timber was authority that might be revoked at any time before the timber was cut, but that there was no evidence of a revocation, so that, if authority was given, the license continued, plaintiff cannot complain of the instruction on the ground that there was no issue as to revocation and so the instruction was misleading, where defendant requested an instruction that the jury were not to consider the question of whether the license, if found, was revoked, as that question was immaterial under the pleadings.

In an action of trespass for cutting timber, where defendant deliberately testified, after refreshing his memory from a memorandum, that he cut timber after a designated date when he received from plain-

tiff written notice to quit, and when later on the stand he said that he had not cut any after that date, the court was justified in submittting the question to the jury.

In an action of trespass for cutting timber, where defendant pleaded a license, and plaintiff's replication was a general denial of that plea, he could recover for timber cut after the expiration of the alleged license.

In trespass for cutting timber, where the court instructed that the jury was not entitled to figure interest on the damages, but might add to the damages such sum as they might think proper and right for the delay in payment, defendants' exception to the instruction, "because the charge lays down no rule as to what should guide the jury in arriving at what is proper and right for delay in payment" is not available, where that exception was the sixty-second of 76 exceptions taken to the charge, and the court corrected many of its instructions in a supplemental charge, and as its failure to correct this one by the limitation, "not exceeding the legal rate of interest" can easily be accounted for by the multiplicity of the exceptions taken, the court was entitled to a reminder.

Where plaintiff's counsel said that they would not claim a recovery on designated additional counts, and the court said that they had a right to waive recovery on those counts, and defendants' counsel then moved for judgment for that, since plaintiff had spread such waiver on the record, there was no answer to certain pleas, defendant could not thereafter prevail on a motion in arrest for misjoinder of those counts, based on the fact that they had not been formally stricken from the record.

TRESPASS QUARE CLAUSUM. Pleas, the general issue, and special pleas justifying under a deed and license from plaintiff's cotenant. Trial by jury at the December Term, 1910, Caledonia County, *Butler,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. This case has been twice before in Supreme Court, see 82 Vt. 182; 83 Vt. 35.

*Harland B. Howe* and *Herbert W. Hovey* for the defendants.

*Elisha May* and *George L. Hunt* for the plaintiff.

MUNSON, J. A letter from plaintiff to defendants, dated September sixth, having been received in evidence, plaintiff was permitted to testify to the contents of a lost letter which he claimed to have received from defendants in reply. It appeared from plaintiff's testimony that he had a receipt from defendants, that this receipt was referred to in his letter of the sixth, and that the lost letter related to the contents of his letter. Evidence of the contents of the lost letter was received against defendants' objection that the plaintiff was not qualified to testify as to its being from defendants, not being acquainted with their signature, and "not having conducted a course of correspondence with them any more than to have this receipt,—which is not correspondence." We think the connection between the receipt and the plaintiff's letter, and the connection between the plaintiff's letter and the lost letter, were such as to justify proof of the contents of the latter.

In testifying to the contents of this letter, the plaintiff was permitted to refresh his recollection from a letter which he wrote to his counsel soon after this letter was received. When defendants' counsel asked to see the letter so used, plaintiff's counsel objected to their having the whole letter, suggesting the inclusion of confidential communications; and the court restricted the inspection to the signature and that part of the letter which the witness said he made use of. We think this disposition of the matter was within the discretion of the court.

One Morgan, an experienced lumberman, who had done much cutting in the vicinity of the Lee farm, and had bought and sold lumber on the stump, and knew the distance and the roads over which the lumber was taken, and knew that there was quite a hill on the farm, but had never been on the land where this cutting was done to make any examination of it, was permitted to testify to the stumpage value of merchantable lumber of the kinds taken. This was against the objection that the witness did not know the lay of the land and the difficulty or ease with which the lumber could be taken off. The statement may fairly be construed to indicate that the witness had some knowledge of the territory where the lumber was cut, and we cannot say that the court erred in treating him as qualified.

Evidence of the same character was given by R. M. Lawrence; and it is objected that this witness had never been on the Lee farm, and had never examined any of the lumber cut by

the defendants. The witness testified that he thought he knew where the defendants cut lumber on the Lee farm; that it was off the mountain across the pond. This brings the evidence, as regards the first objection, within the point just decided. Clearly, an inspection of the lumber cut was not necessary. It is objected further that the witness should have been confined to some definite grade of timber. The witness generally limited his answers to lumber of good quality, good lumber, lumber that was sound and all right; and was evidently testifying throughout with reference to such lumber. This was a sufficient designation of the grade.

W. R. Richardson, a man of large experience in estimating timber, who had estimated the timber in question, was permitted to give an estimate of the stumpage value of the timber. It was objected that it did not appear that he had any knowledge as to the value of stumpage in that vicinity. It appeared that he had estimated the value of stumpage on other lands in Waterford, and in Concord, an adjoining town, and in Lunenburg, a town adjoining Concord, and that he had made such examination that he had special knowledge in respect to the value of stumpage. Knowledge of the value of stumpage necessarily involves knowledge of the market value of lumber in the vicinity of the stumpage. So there was evidence tending to show that the witness had some knowledge of the stumpage value of this lumber.

It appeared that some of the timber cut was less than ten inches on the stump, and this witness was permitted to testify that the small growth was worth more standing than cut. It is urged against this testimony that the witness had no knowledge as to the value of the small growth on the Lee farm, and was not an expert on the value of real estate in that vicinity. The admissibility of the evidence as against these objections sufficiently appears from what has already been said.

The testimony of Albert Lee was taken *in perpetuam* at the request of the plaintiff, and was recorded in the county clerk's office as required by our statute. The plaintiff did not offer the deposition in evidence, and when offered by the defendants it was excluded. The use of such a deposition is determined by P. S. 1630. It may be used "by the person at whose request it was taken, or by any person claiming under him." The defendants insist that inasmuch as they are claiming under a license from the plaintiff, they are within the very terms of the statute.

But the sense of the simplest phrase may depend upon the subject-matter to which it relates. Thus viewed, the person referred to here as claiming under the party taking the deposition would be one who had taken his place in relation to the controversy. We think that defendants who are contesting a claim of trespass on the ground of a license which the plaintiff denies, are not claiming under the plaintiff within the meaning of the statute. As against others they would be claiming under the party taking the deposition; as against him they are claiming adversely.

At the close of all the evidence the defendants moved for a verdict on the ground that Albert Lee and his wife, by virtue of a conveyance from Isabel Lee, were seised and possessed of a homestead right in the premises which had not been set out, and that the plaintiff had no right in or possession of the close as against this homestead estate, and that Albert Lee could license the defendants to enter by reason of such homestead estate. If these conclusions followed from the fact that the homestead had not been set out, there was ground for the motion. But they do not follow from that fact. The interest of Isabel Lee did not extend to any part of the real estate beyond that portion of the dwelling, outbuildings and land used in connection therewith to the value of five hundred dollars. *Lindsey* v. *Brewer,* 60 Vt. 627, 15 Atl. 329. The homestead must center in and about the dwelling-house, and the statute does not prevent the husband from disposing of the overplus if he leaves the dwelling-house, outbuildings and land used in connection therewith of sufficient value to answer the demands of the statute both at the time of the conveyance and at the time the homestead may become vested in the widow. *Thorp* v. *Thorp,* 70 Vt. 46, 39 Atl. 245. It appeared from undisputed evidence that there was but one dwelling-house on the farm, that this and the outbuildings were worth $2,000, and that the tracts of woodland cut over by the defendants were from three-fourths of a mile to a mile from the dwelling-house, and were separated from the intervening pasture land by a fence. So upon the case presented the land where defendants' cutting was done was not a part of the premises used in connection with the buildings, and a conveyance of that land by the owners of the residue would have left the homestead right unimpaired.

The court permitted the plaintiff to recover for the fourths of John and Howard as well as his own. Such a recovery is

permitted as against a stranger to the title. · The defendants claim that they were not strangers to the title, but entered under a color of title. The plaintiff insists that they were strangers to. the title because the grants from Albert were inoperative as to his three brothers, as held in this case when here before. 83 Vt. 35, 74 Atl. 327, 138 Am. St. Rep. 1061. We think the plaintiff's claim is correct. Albert's deeds being inoperative as against his co-tenants, the title stands, as regards their rights, the same as if the deeds had not been given. So in determining the scope of Edward's recovery, the defendants must be treated as strangers to the title. The deeds did not give them even color of title as against Albert's co-tenants.

The defendants excepted to the court's instruction to the jury that they were not to presume anything that Albert testified to in his deposition, nor to consider what was in the deposition. It appears from the charge on this subject that in connection with the offer of Albert's deposition by the defendants some suggestions were made in the presence of the jury as to what was testified to in the deposition. In view of this the court said: ''We are not to presume any thing that Albert testified to, neither are we to use the assertions of counsel of what Albert said in the deposition as evidence; that is not evidence. * * It was proper for counsel to comment upon the fact that this deposition was not used by the plaintiff, but that would only have a bearing upon the evidence given in court, * *; you should not consider what was claimed to have been in that deposition as evidence in any way. * * The only thing that can be presumed is that the evidence of the witness who testified would not on the whole be favorable to the party who could have used it.'' Defendants also excepted to this last expression, and now claim that it was an incorrect statement of the rule. The court followed these instructions with an illustration of the position in which the party taking a deposition might be placed with reference to some fact testified to, if the deposition were used. This also was excepted to. ¡We think the cautions against presuming what Albert had testified to were proper in the circumstances; that the rule as given was in substance the rule approved in our decisions; and that the use of the illustration, if in any sense objectionable, was not reversible error.

Errors are claimed because the court said that the defendants admitted that the plaintiff was a tenant in common of the

close; that if Albert had no authority to give the deeds they were of no effect as far as the plaintiff is concerned; and that the burden was on the defendants to establish the fact of a license. It is argued that the defendants made no such admission; that it was not necessary that Albert have authority to give the deeds, if he had express or implied authority to sell the timber and license the defendants to enter and remove it, and that an invalid deed may operate as a license; that the burden was not on the defendants to prove a license in fact, because the evidence tended to show that the plaintiff kept Albert in charge and possession with authority to give license. These claims cannot be sustained. The pleas on which the case was being tried set up the plaintiff as one of four tenants in common. If an invalid deed operates as a license, it is because of some authority back of the deed. The charge that the deeds were of no effect as against the plaintiff, if given without authority, was followed by the statement that in such case the defendants "must establish this license," evidently referring to the claimed parol license. Evidence tending to show that plaintiff kept Albert in possession with authority to license did not shift the burden of proof.

The court charged as follows: If the plaintiff "did not know of the deeds given by Albert, or that Albert had made the sale to the defendants, then he would not be bound to protest, even if he knew that the defendants were cutting timber from this land. For he is not bound to protest against a mere trespass unless he understands that the trespasses are being committed under a claim of right or authority. If a man enters upon your farm, cuts down your timber, without any authority from you or any one having the color of title, you are not bound to go and stop him or protest, because he is doing it without right and without color of right." The defendants excepted to the charge that if the plaintiff did not know of the sale he would not be bound to protest, saying: "It would be his duty to inquire while he was there on the land in question, and not shut his eyes to what was going on there, with Albert in possession and in the management of the property, as the evidence tended to show he was." It is now argued that the defendants were not mere trespassers, but entered under the color of title afforded by a deed which gave an accurate description of the property; that the acts of the defendants were acts of possession, and that the plaintiff had notice on the town records that they claimed title

to the timber; that the plaintiff could not close his eyes to what
was going on and assume that the defendants were trespassers,
but was bound to exercise reasonable diligence in prosecuting
inquiry when he saw the defendants cutting the timber.   But the
record of a deed is notice only to those who are bound to search
for it.   We think a tenant in common is not bound to examine
the records to see whether his co-tenant has given a deed which
could not be effective against his rights, even as color of title, and
that the one relying upon such a deed cannot claim that his acts
charged such tenant in common with the general duty of inquiry.

The defendants, in three separate but consecutive requests,
asked the court to charge that if the plaintiff did not authorize
Albert to sell the timber, but approved and ratified the sale after
it was made, he could not recover; that ratification would be any
act or consent expressing approval of the sale, whether made to
the defendants or to Albert; that the sale could be ratified and
approved by the plaintiff after it was made although he did
not know of it until it was completed, and that this would relate
back to the time of the sale and make it binding on the plaintiff.
The court charged that if the plaintiff stood by and permitted
Albert to sell the timber, knowing that he was doing so, that
would constitute a license; that if the plaintiff knew that Albert
had sold the timber to the defendants, and that the defendants
were about to enter for the purpose of cutting and removing
it, and stood by and permitted them to do so without protest that
was a license; that if the plaintiff knew of the sale and stood
by and permitted the defendants to go on under it without pro-
test, that would be a license or ratification of the license which
he knew had been given.   Defendants excepted to the charge
because it did not comply in form or substance with their re-
quests above stated, and to the charge as given upon the subject-
matter.   Counsel also said: ''I think that there ought to be
something more said on the question of ratification''; and in a
further charge the court said that if the defendants had failed
to establish that Albert had authority to sell this timber, or that
the plaintiff stood by and permitted him to do so, knowing what
he was about to do, or that the plaintiff knew that Albert had
undertaken to sell this timber and by his conduct ratified the
sale, then the verdict should be for the plaintiff; but that if the
defendants had established these facts, or any of them that con-

stituted a license, the verdict should be for the defendants. No further exception was taken.

In considering the exceptions taken to the failure to comply with the three requests above stated, reference should be had to a further matter connected with the charge. In directing the attention of the jury to evidence of a conversation between the plaintiff and Albert shortly before the deeds were given, the court said that no witness had testified ''directly to the giving of this authority to Albert.'' The defendants excepted to this statement, saying that George Green had testified that Edward told Albert to sell the timber. In a supplemental charge the court called the attention of the jury to this claim, and left it for them to recall the testimony and determine just what it was. The defendants did not treat this as disposing of the exception, for the testimony of George Green and Emmett Palmer is referred to upon the question whether any witness testified directly to the giving of authority to Albert. The reference to this testimony to determine the accuracy of the court's statement necessarily involves the question whether such statements as were testified to were made before or after the sale, and so presented a case of authorization or of ratification. It is difficult to find in the testimony referred to any direct evidence of authority given to Albert; but if it is considered that there was such evidence, the error of the court in stating the contrary was corrected by its further charge. The indefiniteness of the testimony is such that it is difficult to determine whether the statements referred to were made before or after the sale. The only statement which can fairly be assumed to have been made subsequent to the sale, if taken to refer to the timber in question, appears in the testimony of Green, who says that one morning, as Edward was getting ready to leave, he said to his brother: ''Albert, you remember about those corners up there; (see) that they don't get off onto other folks' land; you look after it''; and that Albert replied, ''I will.''

It is not claimed that any statements of authorization or ratification were made by the plaintiff to either defendant. So whatever the court said regarding the effect of plaintiff's expressions of approval, whether made before or after the sale, must have been understood to apply to his conversations with Albert. There was nothing in the case presented, nor in the language of the second of these three requests, that called for

specific instructions distinguishing between express and implied ratifications. We think all three of the requests were substantially complied with. The court sometimes uses the word "ratification," and sometimes treats the silence of the plaintiff with knowledge of the sale as amounting to a license. The plain meaning of the charge is that if the plaintiff knew of the sale at the time it was made, or learned of it after it was made, and permitted the defendants to proceed under it, the mere fact of his silence would prevent a recovery. If the jury thought there was evidence tending to show a subsequent express approval of the sale, they could not possibly suppose that such an approval would be less efficacious than mere silence.

The court charged that the license was authority which might be revoked at any time before the timber was cut, but that there was no evidence of a revocation, so that if authority was given the license continued until all the timber was removed; and said later that there was no question of revocation in the case. Defendants excepted to this charge because there was no issue in the case as to whether the license could be revoked or not. It is now argued that, there being no question of revocation in the case, the instruction was liable to mislead the jury. But defendants cannot well claim this, for they requested an instruction that the jury were not to consider the question of whether the license, if found, was revoked, inasmuch as that question was immaterial under the pleadings.

The court charged that whatever might be found regarding the claimed license from the plaintiff it could not affect his right to recover for timber cut on lot one after April 1, 1905— the day on which the right to cut under Albert's deed expired. The only testimony that any of the lumber from this lot was cut after that date came from defendant Follensby. It appeared that under date of September 6, 1905, plaintiff wrote the defendants forbidding further cutting. In the cross-examination of defendant Follensby he was asked whether any cutting was done on the second tract before he received plaintiff's letter, and replied that there was not as he recollected. The examination then proceeded as follows: "Q. But you had completed the cutting on the first tract next to the Fay land at that time? A. No. we had not. Q. (The Court) You hadn't completed cutting on the first tract? A. No, sir. Q. Then you cut considerable after that did you? A. A small portion of the piece they

finished up that winter of 1904-5. Q. How many thousand do you think you cut on the first tract after September 6, 1905? A. Well now, I have a memorandum of that to refresh my mind. Q. Will you look at it and tell us. A. About 43 to 45,000 that was cut to balance up the contract. Q. (The Court) That is, you had already cut on the first tract from 43 to 45,000 when you got that letter? A. No, we had that balance to cut." When next on the stand he changed his testimony in this respect. It is claimed that this slight mistake, so quickly corrected, did not justify the submission of this matter to the jury. But we think the first statement was made with such references to a memorandum and the date of the plaintiff's letter that it was not error to leave it to the jury to say which statement was right. It is said further that the submission was error because the plaintiff did not claim in his replications that the defendants had exceeded the license. The wrong complained of here lies, not in exceeding the license as regards the limits of location or the character of the acts, but in exceeding the limit of the license as regards time; that is, in continuing the cutting within the described close after the time allowed for it had expired. We think this claim could be made under the general replication. It has been held in the case of a license pleaded, that where the declaration alleged the commission of trespass on divers days and times, and the defendant pleaded a license generally, viz., on the several days and times when, etc., without confining the generality of the declaration by specifying any particular trespass or trespasses, he was bound to show a license co-extensive with the trespasses proved, and that proof of a trespass prior to the license entitled the plaintiff to a verdict on the general replication. *de injuria,* without any new assignment. 1 Chit. Plead. *634; *Barnes* v. *Hunt,* 11 East 451.

In its instruction regarding damages, the court said to the jury: "You are not entitled to figure interest upon the damages" you may find for the plaintiff, "but you are entitled to have in mind the time that has elapsed since the taking of the timber, and add to the damages such sum as you may think is proper and right for the delay in the payment." To this the following exception was taken: "The defendants except to the charge of the court that they shall add such sum as they think proper and right for the delay in the payment, because the charge lays down no rule as to what should guide the jury in arriving at

what is proper and right for delay in payment.'' The attention of the court was not otherwise directed to what it had said on the subject. The court should have added to its instruction; ''not exceeding the legal rate of interest.''

In ordinary circumstances the exception taken would probably be held sufficient to save the point. But the circumstances here were not ordinary. The defendants did not except to the whole charge, but they took seventy-six exceptions to the charge which apparently covered everything in it; the exception in question being number sixty-two. After hearing these seventy-six exceptions presented, the court charged the jury further on some of the points complained of, but failed to mention this. The omission of the limitation in the original charge was doubtless an inadvertence, and the failure to correct the instruction in the supplemental charge can easily be accounted for by the multiplicity of the exceptions taken. In view of the nature of the error made, and of the burden imposed upon the court by the course taken, which cannot well be claimed to have been essential to the protection of the defendants' rights, we think the court was entitled to something further in the way of statement or reminder.

The defendants filed a motion in arrest of judgment on the ground that there was a misjoinder of counts. There was evidence in the case applicable to all the counts. While plaintiff was putting in his opening case he obtained leave to amend the declaration by striking out the fifth additional count. He never obtained permission to amend by striking out the first four additional counts, unless such permission can be inferred from what was said by the court during a discussion had by counsel. Plaintiff's counsel stated that they did not and should not claim to recover under these counts, but there was no formal withdrawal of them, and no striking out in terms. The case was submitted to the jury solely on the original *quare clausum* counts, but the jury were not informed that the first four additional counts could not be made the basis of recovery. If these counts are to be treated as remaining in the declaration the case is within the decision in *Rowley* v. *Shepardson,* 83 Vt. 167, 74 Atl. 1002, 138 Am. St. Rep. 1078, which is relied upon by defendants.

While the defence was going in, plaintiff's counsel said they should not claim to recover under the *de bonis* and trover counts, and defendants' counsel said, ''That is equivalent to striking

those counts out, is it?" and plaintiff's counsel replied, "I don't understand they will stay in as a basis of recovery." Defendants' counsel then asked the court to indicate whether this course would be permitted, and the court said its understanding was that at any time before the close of the trial the plaintiff could waive recovery under any of the counts; whereupon defendants' counsel said, "and you now waive that? that's the construction as I understand it"; and the court remarked, "That is what they said." Later in the trial, defendants' counsel said to the court: "The plaintiff having spread upon the record the fact that they claim no recovery under their trover and *de bonis* counts, we move for judgment because there is no answer to our fourth and fifth pleas, which relate to the original cause of action. Therefore there is no issue here whatever. * * *" In taking this position, defendants' counsel treated the remaining four additional counts as no longer in the declaration; and the defendants cannot now take advantage of the fact that the counts were not formally and in terms stricken out.

Defendants' counsel, before taking up their brief, referred to the great number of points made in it, and orally indicated certain subjects to which the attention of the Court might be confined. A number of points briefed are left without consideration; some because not included in the subjects named, and some because sufficiently disposed of by the views expressed on other points.

*Judgment affirmed.*