## J. B. H. CUSHMAN v. M. C. DAVIS.

### January Term, 1906.

Present: TYLER, MUNSON, WATSON, POWERS, and MILES, JJ.

Opinion filed July 11, 1906.

*Homestead—What is Abandonment—Several Abandonment by Husband and Wife—Acquisition of New Homestead —Replication in Chancery—Filed with Master—Effect.*

A husband's sole deed of his homestead is void.

When a homestead ceases to be "used and kept" as such, it ceases to exist, regardless of whether another has been acquired.

A homestead is abandoned by simply removing from the premises, with no intention of either occupying or keeping them as a homestead; and this is as completely effected by the several and independent removal of the husband and wife, each at different times, but each with the requisite intention, as by a like joint and contemporaneous removal.

Where a husband and wife severally and independently removed from their homestead' premises, each with no then intention of again living thereon, the homestead thereby ceased to exist, and could not be revived by an unexplained claim of an interest therein, asserted by the wife a long time thereafter.

Error must be affirmatively shown by the record; it will never be presumed.

In a suit in chancery, the filing of the replication with the master to whom the case is referred amounts to nothing, leaves the case standing on bill and answer, and the master should refuse to go to trial; but where, after the replication is filed with such master, a full hearing is had before him, and the chancellor subsequently allows the replication to be filed *nunc pro tunc*, the defect is cured.

APPEAL IN CHANCERY, Washington County. Heard at Chambers, November 21, 1905, on the pleadings, master's report and defendant's exceptions thereto, *Rowell,* Chancellor. Decree for the orator. The defendant appealed.

*M. M. Gordon,* and *Senter & Senter* for the orators.

Unless there is a dwelling house owned by the house-keeper actually on the place, or one in process of erection and designed for a home, there is no homestead. *Rice* v. *Rudd,* 57 Vt. 6; *Pease, Admr.,* v. *Sherlock,* 63 Vt. 622; *Bugbee* v. *Bemis,* 50 Vt. 216; *Thorp* v. *Thorp,* 70 Vt. 46; *Woodbury* v. *Warren,* 67 Vt. 251; *Whiteman* v. *Field,* 53 Vt. 554.

Spaulding and his wife both left the premises, with no intention of ever returning. This constitutes an abandonment. *Howe* v. *Adams,* 28 Vt. 541; *Davis* v. *Andrews,* 30 Vt. 678; *Jewett* v. *Brock,* 32 Vt. 65; *McLeay* v. *Bixbee,* 36 Vt. 254.

*Young & Young* for the defendant.

When a homestead right has once attached, it will not be considered abandoned till another has been acquired. *Woodbury* v. *Luddy,* 14 Allen (96 Mass.) 1; *White* v. *Clark,* 36 Ill. 285; *Van Bogart* v. *Van Bogart,* 46 Iowa 359; *Moore* v. *Dunning,* 29 Ill. (19 Peck) 130; *Taylor* v. *Hargous,* 4 Cal. 268; *Ott* v. *Sprague,* 27 Kan. 620; *Dickinson* v. *McLane,* 57 N. H. 31; *Poole* v. *Gerrard,* 6 Cal. 71.

If the separate deeds of the husband and wife will not convey the homestead, how can the separate acts of each, or the separate oral declarations of each, render the sole deed of either effectual to convey the homestead? *Lyons* v. *Andry,* 106 La. 356; *Woodward* v. *Till,* 1 Mich. N. P. 210; *Kelley* v. *Duffy,* 31 Ohio St. 437; *Herron* v. *Knapp,* 72 Wis. 553; *Castlebury* v. *Maynard,* 95 N. C. 281; *Conway* v. *Elgin,* 38 Minn. 469; *Sherrid* v. *Southwick,* 43 Mich. 517; *Meader* v. *Place,* 43 N. H. 307; *Roshold* v. *Mehus,* N. D., 23 L. R. A. 239; *Chambers* v. *Cox,* 23 Kan. 393; *Bruner* v. *Bateman,* 66 Iowa 488; *Belden* v. *Younger,* 76 Iowa 568; *Lunt* v. *Nealey,* 67 Iowa 97; *Cogswell* v. *Warrington,* 66 Iowa 666.

MILES, J.   This is a bill in chancery to remove a cloud from the alleged title of the orator to certain real estate in Charleston, Vt., which he claims to own by virtue of a series of conveyances beginning with a quitclaim deed from George C. Spaulding to L. W. Stevens, bearing date April 15, 1904.

The alleged cloud is a quitclaim deed of the same real estate from Spaulding and his wife, Ellen M. Spaulding, to the defendant, bearing date December 3, 1904.

The bill was answered, but no replication was filed or made in the case within the rule, nor before the parties met for hearing before the master.   At the commencement of that hearing the orator asked leave of the master to file a replication with him; which was granted subject to defendant's exception, and after the same was filed a full hearing was had, with evidence produced by both parties, and upon that evidence the master made his report to the court of chancery, returning therewith the replication.

To all evidence received by the master on the issue joined by filing such replication, to the master's report and to evidence excluded by the master, the defendant seasonably objected and was allowed an exception.

The master found, among other things, that the real estate in question became the property of Spaulding on June 4, 1900, and that he married Ellen M., June 17, 1900, from which last named date they lived on the real estate in question, upon which there was then a house and barn, until July 6, 1901, when George C. left his wife and the premises with no intention of again returning to live thereon and never thereafter did return to and live upon the same; that the wife continued to live there until June, 1903, when the dwelling house upon the premises was burned; that thereupon the

wife moved to Canada taking with her the household goods belonging to her and George C. and leaving the premises with no intention of again returning to or living upon them and she never since has lived upon them; that the consideration for the deed from George C. and Ellen M. to the defendant was twenty-five dollars paid to Ellen M. and five dollars to George C.; that since George C. and Ellen M. left the premises neither have acquired any other homestead, and have lived apart ever since, both being poor and practically without means with which to purchase or create any other homestead; that the wife, at one time, was aided as a pauper by the town of Charleston, for which aid a suit was brought by that town against George C., to recover for such aid and the premises were attached upon the writ in that suit; that such suit was finally settled without resort to the sale of the premises; that at the time the defendant took the deed from George C. and Ellen M., on December 3, 1904, he had full knowledge of the deed from George C. to L. W. Stevens, and of the several intervening conveyances down to and including the conveyance to the orator and that Ellen M. claimed an interest in the premises at the time she joined in the deed to the defendant.

Upon the foregoing facts, the defendant claims that George C. and Ellen M. had a homestead in the premises at the time of the conveyance to L. W. Stevens and until they gave the quitclaim deed to the defendant, December 3, 1904; and that the quitclaim deed to L. W. Stevens on April 15, 1904, without the wife's joining therein, was absolutely void and that therefore the orator, who rests his claim upon that deed, has no title to such premises, but that the deed to the defendant from George C. and wife invested him with the full title and that therefore it is not a cloud upon the orator's

title, but is the title itself. Without inquiring as to whether such deed from George C. and Ellen M. to the defendant is or is not a cloud upon the title of the orator, but considering that matter as the parties themselves have treated it, viz.: that if invalid, it is a cloud, we proceed to consider, as the first and principal question, whether the orator's title is or is not valid.

If the real estate in question was the homestead of George C. at the time he conveyed it by quitclaim deed to L. W. Stevens, *Martin and Wife* v. *Harrington,* 73 Vt. 193, is full authority for holding, that such deed was void and conveyed no title to L. W. Stevens, the wife then being alive and not having joined in the deed, and it is therefore unnecessary to consider the many authorities contained in the defendant's brief upon that point, taken from other jurisdictions.

The question then is, was the real estate in issue, the homestead of George C. at the time he quitclaimed the same to Stevens, April 15, 1904? No serious question is made but that it was the homestead of George C. and wife until the house was burned in June, 1903; but the orator contends that, under the facts found by the master, that homestead was abandoned when the wife moved to Canada, taking with her all her household furniture, with no intention of returning to and again living upon the premises, never having returned to and lived upon them since that time, and George C. having left the premises long before the wife, with no intention of again making his home there and having never since changed that intention nor lived thereon nor with his wife. On the other hand, the defendant urges, that such homestead was not abandoned on account of such acts of George C. and wife, because they have acquired no other homestead since; because they could not abandon the homestead by any separate act of their

own, and because the wife did not voluntarily leave the premises, but was forced by circumstances to do so, and because she claimed an interest therein at the time she joined in the deed to the defendant, December 3, 1904.

. Under the defendant's contention that the homestead was not abandoned, because George C. and Ellen M. had acquired no other before the conveyance to L. W. Stevens, he cites *Woodbury* v. *Luddy,* 14 Allen 1 (96 Mass.). That decision rests entirely upon a construction of the Massachusetts statute, which then provided that no release or waiver of the homestead exemption should be valid unless by deed for good consideration, acknowledged and recorded as in cases of conveyances of real estate, and that no new right of homestead should be acquired until a previous one had been discharged or released by deed, with the consent of the wife therein. That case we hardly think can govern in the case at bar; for it rests entirely upon the construction of a statute to which we have nothing similar. No other case is cited upon defendant's brief supporting his contention upon this point, unless it is the case of *White* v. *Clark,* 36 Ill. 285. Upon an examination of this case, it will be observed that it is nowhere stated that the homestead cannot be abandoned until another is acquired; but, if the case did so hold, it could hardly be said to be authority in this State, as the statute is substantially the same in Illinois as in Massachusetts, and not like any statute in this State.

It is unnecessary, however, for us to resort to other jurisdictions for authorities upon this point; for we think this Court has abundantly settled all questions in this respect. Our present homestead law was passed in 1849. Sections one and five of No. .20 of the Acts of that year, are the same in legal effect as sections 2179 and 2189 V. S., except, that

at the time of the passage of that act, the law required the homestead to be "occupied" by the head of the family, instead of "used or kept" as now required, in order to constitute the homestead right, section one of said act corresponding to section 2179, V. S., and relating to attachments of. the homestead, and section five corresponding to section 2189, V. S., and relating to conveyances of the homestead. The first case construing these sections, or either of them, is *True* v. *Morrill*, 28 Vt. 672. In that case the Court held, that there was no homestead, because the head of the family or housekeeper did not *"occupy"* the premises then in dispute; thereby holding that occupancy was a necessary element in the existence of the homestead; from which it must follow, that when the homestead ceases to be occupied, it ceases to exist, whether another has been acquired or not.

Again later, a case came up under the homestead statute respecting the husband's sole deed of what was once his homestead, but which he had leased for a period of five years, *Davis* v. *Andrews*, 30 Vt. 678, and the Court say, Poland, Judge, delivering the opinion : "One of the requisites of a homestead by the statute is, that it shall be occupied by such person as a homestead."

It is said in *Mills* v. *Grant*, 36 Vt. 269: "The statute definition of a homestead necessarily implies a home actually used or occupied by the housekeeper as a dwelling place or home for himself and his family."

The foregoing decisions were made under the Act before the amendment; but this Court has held since the amendment that the homestead should be actually *"used or kept"* as such, as uniformly as it held that it should be actually *"occupied"* as a homestead, in order for it to exist as such, before the amendment. The only difference which the Court has made

between the law as it was before the amendment and as it is since the amendment is, that in one case it was necessary to the existence of the right of homestead that the premises be actually "occupied" as such; while in the other it is necessary that they be actually "used or kept" as such. *Bank* v. *Gale*, 42 Vt. 27; *Whiteman* v. *Field*, 53 Vt. 554; *Russ* v. *Henry*, 58 Vt. 388; *Keyes* v. *Bump*, 59 Vt. 391; *Heaton* v. *Sawyer*, 60 Vt. 495; *Woodbury* v. *Warren*, 67 Vt. 251; *Rice* v. *Rudd*, 57 Vt. 6. All these cases construe the statute so as to make it the essential feature of the homestead act, as it now stands, that the premises must be *"used or kept"* as such, and that when they are not so *"used or kept,"* they cease to be a homestead, whether another has been acquired or not. The language of the statute is not equivocal. It is plain and from the first has received a uniform construction inconsistent with the idea that it could not be abandoned without the acquisition of another. As a piece of evidence bearing upon the intent of the homesteader in the abandonment of the homestead, the acquisition of another place of residence may be useful, but further than this it has no importance in this State.

Upon the point that George C. and Ellen M. could not abandon the homestead by any separate act of their own, the defendant relies upon *Ott* v. *Sprague*, 27 Kansas, 620; *Dickinson* v. *McLane*, 57 N. H. 31; *Poole* v. *Gerrard*, 6 Cal. 71 (65 Am. Dec. 481). These cases, relating to conveyances and not to the subject of abandonment, may express the law as to the effect of separate conveyances by husband and wife in the states where rendered, and probably do, but they can have little, if any, weight in this State, as we have no statute exactly corresponding to the statute under which those decisions were made. If, however, our statute did confine the *conveyance* of the homestead to the joint deed of the husband

and wife, executed at the same time, which we do not decide, the question of *abandonment* must still remain.   It is probably true, that, if the same and no different principles are involved in the conveyance of the homestead than are involved in a simple abandonment of the homestead without deed or writing, then, possibly a decision respecting a *conveyance* might be authority for an *abandonment;* but the principles governing each are not the same.   A *conveyance* transfers the title to the real estate as well as the homestead right, while an *abandonment* of the homestead in no way affects the title, but simply changes the character of such real estate.   The conveyance of real estate in most, if not all the states, is controlled by statute, and must be executed and effected in the manner pointed out by the statute creating the right; while the abandonment is effected by simply removing from the premises with no intention of either occupying or keeping them as a homestead.   The former, to be effectual, requires a strict compliance with the express provisions of the statute; while the latter only requires the removal and requisite intention.   Intention under the statute of this State largely determines whether the real estate is kept or used as a homestead. *Thorp* v. *Wilbur,* 71 Vt. 266; *Thorp* v. *Thorp,* 70 Vt. 46; *Whiteman* v. *Field,* 53 Vt. 554.   In some of the states, the statute may be such as to wholly preclude the possibility of abandonment of the homestead, except by writing or deed; but where a statute exists giving the right to convey and release the homestead, but not precluding the possibility of abandonment, as in this State, the two methods of divesting the husband and wife of the homestead right stand independent, each resting upon its own peculiar requisites.

As above stated, the defendant does not and could not dispute but that the right exists in this State of conveying

and also abandoning the homestead. It therefore follows, that decisions respecting the two distinct methods, having very little, if anything, in common, are of very little aid in determining questions arising respecting the other, and that, it is perfectly consistent to hold in one that the acts of the husband and wife must be simultaneous in the conveyance of the homestead, where the statute so requires, and yet that they may abandon by separate acts.

The defendant urges, that, if the homestead can be abandoned without another having been acquired and by separate acts of the husband and wife, yet in this case it was not abandoned by the wife, as she left the place because forced to do so by circumstances over which she had no control, and because she claimed an interest in the premises at the time she joined in the deed with her husband.

An answer to the defendant's contention upon this point is, that the master has found that the husband and wife left the premises with no intention of again returning to live upon them, and it makes no difference that they left at different times. Whether this be called an abandonment or otherwise, it was an act coupled with an intention, which, under the statute, prevented the husband and wife, or either of them, from saying that the real estate in question was *"used or kept,"* as a homestead, and though the husband still continued to own the land, its character as a homestead ceased to exist, and could not be revived by an unexplained claim of interest asserted by the wife a long time after the abandonment of the possession of the premises. The removal from the possession of the premises in question by both husband and wife, as in this case, with no intention of again returning to or living upon them, was sufficient, under the statute, to terminate the existence of the homestead interest; for it could not

then be said that they were *"used or kept"* as a homestead; and such facts being found in the report, it becomes unnecessary to consider or decide what the result would have been if the master had found that the wife continued to claim a homestead in the premises after the house had burned, and intended, from the date of the fire to the time she joined in the deed to the defendant, to return to and live upon the same.

The result of the foregoing discussion is that on the 15th day of April, 1904, the real estate in question was not the homestead of George C. and Ellen M., and that the sole deed of the said George C. conveyed the premises to L. W. Stevens, and that through the subsequent conveyances from Stevens and his grantees that title came to and is now in the orator, and that the deed from George C. and Ellen M. to defendant, conveyed no title to the defendant, and that therefore said last named deed is a cloud upon the orator's title.

As to the defendant's contention that it was error for the chancellor to allow the replication to be filed *nunc pro tunc,* we take occasion to say, that the filing of the replication with the master to whom the case wes referred, was of no avail, and left the case standing on bill and answer. The case standing thus, the master should have refused to go to trial; but a hearing was had and leave subsequently obtained from the chancellor to file a replication *nunc pro tunc.* This was within the discretion of the Chancellor. Chancery Rule 45. When such leave was granted and a replication filed in accordance therewith, the previous defect was thereby cured.

The defendant contends that the chancellor erred in overruling defendant's exception to the master's ruling admitting evidence tending to show the acts, conduct or declarations of George C., Ellen M., the orator or the defendant, had or

made subsequent to the execution of the deed from George C. to L. W. Stevens, dated April 15, 1904.

It nowhere appears in the record before us nor is it pointed out in the defendant's brief wherein the error complained of lies; nor wherein the defendant is harmed by the admission of such evidence. This Court, therefore, cannot assume that it was of a character to produce error; for error is to be shown by the party claiming it, and is never to be presumed. *McNeish* v. *Hulless Oats Co.*, 57 Vt. 316; *Brooks* v. *Guyer*, 67 Vt. 669.

*Decree affirmed and remanded.*