In re Maxine D. BERNSTEIN, Debtor.

Maxine D. BERNSTEIN, Plaintiff,

v.

Huyler C. HELD, Claude Dern Electric, Inc., Heaslip Fuel, Inc., Putter & Unger Associates, Wilson Clothing, and Internal Revenue Service, Defendants.

Bankruptcy No. 85–238.
Adv. No. 86–10.

United States Bankruptcy Court,
D. Vermont.

June 28, 1986.

Christopher Baril, Asst. U.S. Atty., Rutland, Vt., for Internal Revenue Service (IRS).

Rhys Evans, Manchester, Vt., for Claude Dern Elec., Inc., a judicial lien creditor (Dern).

Timothy Maikoff, Rutland, Vt., for Huyler C. Held, a mortgagee (Held).

Jerome Meyers, White River Junction, Vt., for debtor.

Edward Winpenny, Poultney, Vermont, for Robert Schoenemann (Broker).

FRANCIS G. CONRAD, Bankruptcy Judge.

These proceedings are before the Court on the objection of Dern to the payment of a real estate broker's commission to the

Broker. The debtor in turn has moved to avoid judicial liens that impair the homestead exemption.

The debtor filed a Notice of Intent to Sell property under 11 U.S.C. Section 363(b) on December 12, 1985. We approved the sale provided no objections were received by the Clerk of the Bankruptcy Court by December 31, 1985. No one objected to the proposed sale.

There was an objection, however, to the payment of a broker's commission. The objection to the broker's commission was raised by judicial lien creditor Dern. The debtor also seeks to avoid Dern's judgment lien because it impairs an exemption to which she may be entitled under 11 U.S.C. Section 522(b). Dern objected to the payment of the commission because the property was sold under a pre-petition contract and listing agreement, and because payment of the broker's commission would be a preference to a pre-petition creditor. Dern further objected to debtor's claimed homestead exemption.

We consolidated the objection to paying the brokerage commission, the motion to avoid liens, and the objection to debtor's homestead exemption because they arise from the same property and involve some of the same litigants.

We can decide the right of the Broker to receive his commission without first addressing the debtor's motion to avoid liens or Dern's objection to the claimed homestead exemption.

Under Vermont law, in order to recover a real estate commission, a broker must have a written listing agreement "containing all the ingredients expressly mandated by law under the Statute." *Arjay Properties, Inc., d/b/a Walker Realty v. Jane G. Hicks*, 143 Vt 335, 465 A.2d 777 (1982), quoting *Currier v. Letourneau*, 135 Vt 196, 200, 373 A.2d 521, 525 (1977); *Green Mountain Realty, Inc. v. Fish*, 133 Vt 296, 299, 336 A.2d 187, 189 (1975). See also *Currier, supra*, (a duly executed listing agreement is the sole vehicle upon which a broker can predicate recovery of any commission he alleges is owed him). As an additional requirement, the broker must show that he procured a purchaser, ready, willing, and able to buy the listed property. *Oben v. Ducharme*, 93 Vt 211, 106 A. 777 (1919).

The listing agreement introduced at trial, dated July 3, 1985, between the broker and the debtor, for a term of twelve months, satisfies all the essential ingredients expressly mandated by law. The evidence adduced at trial clearly showed that the broker procured the resulting sale. But for the bankruptcy he would have collected the commission.

The filing of the debtor's bankruptcy petition plunged the broker into a legal environment where he needed our approval in order to collect his commission. Unaware of his predicament, he continued to shepherd the purchase and sales contract through to closing.

It is well established that a real estate broker is a "professional person" within the meaning of 11 U.S.C. Section 327. See *In re Roberts*, 58 B.R. 65 (Bkrtcy.D.N.J. 1986), and the cases cited therein. Section 327 of the Code mandates that the Bankruptcy Court approve the employment of professionals. Implicitly, this broker received our approval when we approved the debtor's notice to sell property (her homestead) under 11 U.S.C. Section 363(b). This notice referred to a real estate commission. When she filed her Chapter 11 petition, the debtor affirmed her intention to honor the pre-petition purchase and sales agreement concerning her homestead.

Dern has not suggested that the broker is not deserving of his commission. The sole question Dern presented is whether the original listing and purchase and sales agreement somehow became severed into discrete entities because of the debtor's bankruptcy, thereby raising the possibility of a preference payment to the Broker. It is not necessary for us to decide if the original listing and purchase and sales agreement became discrete entities on the date the bankruptcy petition was filed. Even though he did not receive our explicit

approval, equity requires that this broker be paid for his considerable post-petition efforts. When it looked as if the ready and able buyer might be unwilling to continue with the pre-petition contract because of the delay caused by the bankruptcy, and the discovery by the purchaser's attorney of several liens on the property, the uncontradicted testimony at trial showed that the Broker held the "deal" together. His most important work was performed post-petition. A payment to him now would not be a preference to a pre-petition creditor, but rather a payment of an administrative expense.

■ The remaining issue pertaining to the Broker is the amount of his commission. As a general policy, this Court has allowed residential real estate commissions in the range of 6–7%. The Broker indicated he would accept a commission of $8,150.00. This is less than we might have awarded him for his efforts. Accordingly, we find his commission to be reasonable.

The second part of these proceedings involved the debtor's motion to avoid judicial liens. To reach the lien avoidance issue, we must first decide if the debtor has a right to claim a homestead exemption in a house and land she had under contract for sale at the time she filed her petition. We think under the circumstances that she has a right to elect the Vermont Homestead Exemption provided under 27 V.S.A. Section 101. Dern, in opposition to debtor's motion to avoid liens, advances two arguments to support its opposition to the homestead exemption claim: First, that the debtor's occupancy of her residence arose after Dern's mechanic's lien, and second, that the debtor abandoned her homestead before she filed her Chapter 11 petition by manifesting her intent to sell it and establish her residence elsewhere. The allegations, while factually correct, do not disqualify her from claiming the exemption.

As to the first argument, Dern directs us to *Cushman v. Davis*, 79 Vt 111, 64 A. 456 (1906) which Dern reads to stand for the proposition that premises be "used or kept" as a homestead, *Davis* at 120, 64 A. 456, and to *In re Avery*, 41 B.R. 224 (Bkrtcy.D. Vt.1984), which requires that the premises be occupied or used.

Debtor, in Dern's view, could not have occupied, used, or kept the premises as a homestead because Dern was still erecting the homestead building for the debtor. As Dern was erecting the homestead building, it argues that its claim for work and materials was accruing, and that the subsequently filed liens merely preserved for defendant Dern its priority over the claimed homestead exemption, Dern's memorandum at pg. 4. Dern further argues that its position is supported by 27 V.S.A. Section 107, which provides:

> Such homestead (referring to the homestead exemption at 27 VSA Section 101) shall be subject to attachment and levy of execution upon causes of action existing at the time of acquiring the homestead, except as otherwise provided in this chapter. For that purpose, such time shall be the date of the filing of the deed of such homestead in the proper office for the record of deeds.

While Dern's reasoning is ingenious, it misses the mark for several reasons.

■ The familiar law of this state, interpreting an antecedent to Section 107,[1] is that the homestead of a debtor is exempt from attachment upon debts contracted after the filing of the deed of the homestead for record in the appropriate Town Clerk's Office and before the occupation of the premises by the debtor as a homestead. *West River Bank v. Joseph Gale*, 42 Vt 27 (1868). "Ordinarily the homestead is purchased and the deed recorded before the occupation commences, often a long time

---

1. "Such homestead shall be subject to attachment and execution, upon any contract that may be made, and for all matters and causes of action which may accrue, previous to, or at the time of the purchase of such homestead, etc., and the time when the deed to the owner of such homestead shall be left in the Town Clerk's Office for record, shall be deemed the time of the purchase thereof for the purpose (homestead exemption) mentioned in this act." Homestead Act of 1849 (Comp.Sts., Ch. 65, Section 6).

before," *West River Bank, supra* at 31. This is the situation here. Debtor filed her deed in the Dorset Town Clerk's Office on June 20, 1979, and moved into her residence on April 15, 1980. The legislature in 1849 and again in 1947 appears to have recognized the inherent problems of moving into or erecting a structure on the homestead when it enacted and reenacted Section 107. The uncontradicted testimony at trial shows that the debtor clearly intended the premises to be her homestead. This intent, being a necessarily important element, satisfies the statute. *Jane E. Whiteman, Exr. v. C.C. Field, J.P. Field, Wm. Field, C.C. Martin, M.A. Bingham, J.S. Bingham,* 53 Vt 554, 557 (1881).

■ Even assuming, arguendo, that Dern's argument is correct, the lien statute at 9 V.S.A. Sections 1921–1924 nevertheless defeats it. Although it is true that the right to file a contractor's lien for labor and materials arises from erecting a building attached to real estate, that right is inchoate until the memorandum required by 9 V.S.A. Section 1923 is recorded and then perfected by attachment or judgment within three (3) months. *Piper v. Hoyt,* 61 Vt 539, 17 A. 798, 75 ALR 700 (1888). Dern introduced no evidence as to when its lien was perfected under 9 V.S.A. Section 1921, *et seq.* although from the pleading we know it to be June 20, 1980. Debtor, on the other hand, introduced an exhibit in the form of a plaque entitled "A House Blessing," presented to her on April 30, 1980, fifteen (15) days after the debtor moved into the house. Using either the date of April 30, 1980 or April 15, 1980, the debtor was in her residence before June 20, 1980, when Dern recorded its attachment/judgment in the Office of the Town Clerk. Based on the facts presented, we find that the debtor established her homestead before Dern's lien attached.

Dern's alternative argument that debtor abandoned her homestead when she decided to sell her homestead is a question that does not appear to have been addressed by this Court, or the courts of the State of Vermont.

■ There is no dispute that the debtor was living in her homestead on the date the petition was filed. There was a purchase and sales agreement in effect on that date to sell the homestead. Debtor testified that she intended to sell her homestead and move into an apartment until she could purchase a new homestead. Her intention, however, had not been carried out at the time she filed her petition. Her clear intent to sell, in the future, without more, cannot establish a present abandonment of her homestead. The converse is equally true. The mere intention of future occupancy is not sufficient to constitute a homestead. *True v. Estate of Morrill,* 28 Vt 672 (1856).

In its memorandum of law, Dern asserts that *Cushman, supra,* applies to this case, and that *Cushman* stands for the proposition that "acquisition of another place of residence is evidence of an intent to abandon, and the act of abandoning a homestead can be a separate and distinct act from the conveyance of the previously abandoned homestead property." Dern's memorandum at pg. 2. In *Cushman,* the husband and wife separately abandoned the homestead; he voluntarily and she involuntarily. Neither acquired another homestead. These are not the facts in this case. The debtor resided in her homestead on the date her petition was filed and had not yet acquired a new homestead. If we were to accept Dern's argument that intent to sell a homestead is the abandonment of it, then every citizen of Vermont would place their homestead exemptions in the coffers of attaching creditors by the mere execution of a listing agreement with a real estate broker or the signing of a purchase and sales agreement that involved their homestead, at least until they changed their minds. The law of this state must be that the intent to sell the homestead is evidence of an intent to abandon the homestead, but no more. Compare *McDonnell v. Ragsdale,* 71 Tex 23, 8 S.W. 625 (a homestead is not abandoned by the desire to sell as long as it is actually occupied).

 No additional evidence was presented beyond the debtor's intent to abandon her homestead at some time in the future after a sale of the homestead took place. Since homestead rights are determined as of the date of the filing of the petition for relief, *In re Avery*, 41 B.R. 224 (Bkrtcy.D.Vt 1984), we find that the debtor had a homestead in her Dorset residence at the date she filed her bankruptcy petition.

Having decided that the debtor is entitled to a homestead exemption under 27 V.S.A. Section 101, we must now decide the merits of debtor's motion to avoid judicial liens.

Debtor argues that pursuant to 11 U.S.C. Section 522(f),[2] all the liens on her homestead premises, with the exception of the liens filed by the IRS and the Held mortgage, are judicial liens as defined in 11 U.S.C. Section 101(30) and may therefore be avoided by the debtor to preserve her homestead exemption. Debtor further asserts that if all the judicial liens are avoided under Section 522(f), such liens are superior to those of the IRS and should be preserved for the benefit of the debtor's estate pursuant to 11 U.S.C. Section 551.

During the course of the hearing we made various rulings in an effort to focus the issues. It is appropriate that they now be summarized for the purposes of the lien avoidance issue.

Debtor and all other parties stipulated early in the hearing that Held held a valid first mortgage. This amount was determined to be $126,972.49 and we entered a separate Order approving a disbursement to him. Prior to receiving evidence on the IRS liens, on motion of the debtor, we orally Ordered the liens of Harry Kristiansen Plumbing ($2,488.60); Heaslip Fuel, Inc. ($1,071.58); Putter & Unger Associates ($1,457.81); and Wilson Clothing of Granville, New York ($1,155.01), plus any accrued interest, be avoided under 11 U.S.C. Section 522(f)(1) because these parties, af-

ter notice, failed to appear and defend against the debtor's motion.

The IRS simplified matters when it conceded that its filed liens for tax years 1979 and 1980 ($9,270.46) and for 1981 ($2,995.30) were probably not enforceable because the debts were dischargeable under 11 U.S.C. Section 523(a)(1)(B)(ii) and consented to having them avoided. With debtor's consent, we Ordered these liens avoided.

 Although no testimony was submitted as to the type, amount, and date of filing of the Dern lien, it is clear from the case record, the proceedings, and the oral representation of counsel that Dern's is a judicial lien within the meaning of 11 U.S.C. Section 101(30). Since Dern's lien is a judicial lien, it may be avoided under 11 U.S.C. Section 522(f)(1) even if the debtor lacks any equity interest in the property. See *In re Brown*, 734 F.2d 119 (2d Cir. 1984). But see *In re Simonsen*, 758 F.2d 103 (3rd Cir.1985) (apparently holding that a judicial lien that impairs an exemption may be avoided only when avoiding the lien would leave some equity).

With all the judicial liens avoided, only one lienor remains—the IRS. The debtor admits that the IRS lien may not be avoided because it is a statutory lien. The lien is for the tax year 1983 and totals in principal amount $1,187.60. We disallow the IRS's claim for penalties and interest because they were unable at the hearing to explain, with any conciseness or clarity of calculation, how they arrived at the amounts claimed for penalties and interest.

If the sole remaining IRS lien cannot be avoided by the debtor because it is a statutory lien, then is the debtor allowed to assert that her homestead exemption leaps into the pecuniary void left by the judicial liens that were avoided? We think not.

---

**2.** (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled un-

der subsection (b) of this section, if such lien is—

(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—...

If we understand debtor's argument presented in her preliminary brief correctly, she urges on us the concept that the transfers avoided in the form of judicial liens in this proceeding are preserved for the benefit of the estate by 11 U.S.C. Section 551, and should be applied to the homestead exemption before the IRS lien because the IRS lien arose after the avoided judicial liens. Debtor's argument, while imaginative, is without support in the Code.

It is not necessary for us to go through an analysis of the relationship between Section 522 and Section 551 because the debtor's argument here is not directed toward the broad category of judicial liens that may be avoided, but against the IRS, a specific statutory lienholder, whose specific lien is addressed in 11 U.S.C. Section 522(c)(1)(B). Section 522(c)(1)(B) states:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except— ...
> (B) a tax lien, notice of which is properly filed.

The IRS lien is a statutory lien for income taxes. It is validly filed, pre-petition, in the Town Clerk's Office of Dorset, Vermont. The underlying debt is non-dischargeable under 11 U.S.C. Section 523(a).

With these facts, the debtor's argument that the avoided judicial liens should be preserved for the estate has no merit. If we were to allow the avoided liens to be preserved ahead of the IRS and allowed to be exempt, we would be merely delaying the inevitable result. While the underlying intent of Section 522(f)(1) is to protect the debtor's exemptions, her discharge, and thus her fresh start by permitting her to avoid judicial liens, but only to the extent that the property could have been exempted in the absence of the lien, Congress could not have intended that the IRS wait to collect its liens when it clearly exempted validly filed tax liens from being avoided to preserve exemptions. House Report No. 95–595, 95th Cong., 1st Sess. 362 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 76 (1978) U.S.Code Cong. & Admin. News 1978, p. 5787. See 11 U.S.C. Section 522(c)(1)(B).

To assist the debtor's attorney in the disbursement of the proceeds resulting from debtor's post-petition sale of her homestead, we provide a calculation that follows the discussion in this Opinion. The calculation is as follows:

| | | |
|---|---|---|
| Proceeds from Sale of Homestead | | $142,292.00 |
| Disbursements made or to be made: | | |
| To Held, first mortgagor | $126,972.49 | |
| To Broker | $ 8,150.00 | |
| To IRS | $ 1,187.60 | |
| To Debtor, for her exemption | $ 5,981.91 | |
| | | $142,292.00 |
| Balance Remaining | | $ 0 |

Now, Therefore,

It is ORDERED that:

1) The debtor's attorney shall disburse $8,150.00 to Robert Schoenemann for his professional services as a real estate broker;

2) The debtor is entitled to a homestead exemption under 27 VSA Section 101;

3) The judicial liens recorded in the Dorset Town Clerk's Office of:

| NAME | AMOUNT | BOOK/PAGE |
|---|---|---|
| Harry Kristiansen, d/b/a Kristiansen Plumbing | $ 2,488.60 | 3/49 |
| Claude Dern Electric, Inc. | $10,912.57 | 3/35 |
| Heaslip Fuel, Inc. | $ 1,071.58 | 3/58 |
| Putter & Unger Associates | $ 1,457.81 | 4/34 |
| Wilson Clothing | $ 1,155.00 | 4/43 |

are avoided under 11 USC Section 522(f)(1);

4) The consent of the IRS to the discharge of its liens recorded in Book 3, page 114, in the Office of the Clerk of the town of Dorset, Vermont, is approved;

5) The debtor's attorney shall disburse $1,187.60 to the IRS, c/o the U.S. Attorney's Office, Rutland, Vermont;

6) The debtor's attorney shall disburse $5,981.91 to the debtor as the amount to which she is entitled under the exemption granted her by 27 VSA Section 101.