**In re APC CONSTRUCTION,
INC., Debtor.**

**Gleb GLINKA, Trustee, Appellant,**

**v.**

**HINESBURG SAND AND GRAVEL,
INC., Appellee.**

Bankruptcy No. 89–61.
No. 90–271.

United States District Court,
D. Vermont.

Sept. 10, 1991.

Gleb Glinka, Glinka & Palmer, Cabot, Vt., for trustee/appellant.

Robert F. O'Neill, Gravel and Shea, Burlington, Vt., for appellee.

## OPINION AND ORDER

PARKER, District Judge.

### BACKGROUND

This is an appeal of the Bankruptcy Court decision in *In re: APC Construction, Inc., (Town of Colchester v. Hinesburg Sand and Gravel, Inc.)*, 112 B.R. 89 (Bankr.D.Vt.1990) in which the Bankruptcy Court denied the trustee's and Town of Colchester's joint motion seeking avoidance of Hinesburg Sand and Gravel's mechanics liens and writs of attachment. The Bankruptcy Court's decision represents a final judgment in a core proceeding under 28 U.S.C. § 157(b)(2); this court has jurisdiction pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court's findings of fact will not be set aside, unless clearly erroneous—with respect to legal issues, however, this court makes its own determination. Bankr. Rule 8013; *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987). Since both parties agree that the issues presented are wholly questions of law, they are reviewed anew without constraint by the Bankruptcy Court's interpretation of the law.

### FACTS

The undisputed material facts are as follows. On October 27, 1988, APC Construction, Inc. (hereinafter "APC", or "debtor") contracted with the Town of Colchester to perform work on the Town's Airport Park Project. During November and December, Hinesburg Sand and Gravel, Inc., a subcontractor, (hereinafter "Hinesburg") sold silt in the amount of $4,495.54 to debtor that was used on the project. Debtor failed to pay for the silt. On January 24, 1989, Hinesburg recorded a notice of lien for Materials and Labor Furnished under 9 V.S.A. §§ 1921, 1923 on the Town of Colchester's property that was improved by the silt. On February 1, 1989, Hinesburg commenced a lawsuit in Vermont Superior Court against APC and the Town of Colchester for the amount due, and filed motions for a writ of attachment and trustee process. On March 10, 1989, APC filed a petition for bankruptcy under Chapter 7. On March 28, 1989, the Vermont Superior Court held a hearing on Hinesburg's prejudgment motions for writ of attachment and trustee process. Since an automatic stay pursuant to 11 U.S.C. § 362(a) had been issued in connection with the APC bankruptcy petition, the Vermont Superior Court stayed the proceedings on the motions against APC. However, the court issued a pre-judgment writ of attachment against the Town's "real and personal property" and trustee process against funds in the Town's bank account.

When debtor failed to complete the project, the Town and the trustee stipulated that $15,191.92, not including a $3,914 contract retainage, was the amount due and owing debtor for work completed. The trustee (appellant) contends that the money owed from the Town is property of the bankrupt's estate and that Hinesburg should be treated as an unsecured general creditor. In opposition, Hinesburg (appel-

lee) argues that its mechanics lien attached prior to APC filing bankruptcy, and therefore it should be treated as a secured creditor.

On July 6, 1989, the trustee and the Town filed a joint motion in Bankruptcy Court seeking to avoid Hinesburg's mechanics liens and writ of attachment. (This motion was properly transformed into an adversary proceeding by the bankruptcy court.) The trustee and the Town claimed that the money due from the Town to APC was property of the estate and asserted that the liens were voidable for two reasons. First, they claimed that the prepetition, prejudgment contractor's lien was "inchoate" and therefore voidable by the trustee under his strong-arm powers of 11 U.S.C. § 544(a). Second, they argued that the lien was a judicial lien within the meaning of 11 U.S.C. § 101(32) (1986)[1] that was voidable as a preference under 11 U.S.C. § 547(b). The Bankruptcy Court held that Vermont contractors' liens were statutory liens within the Bankruptcy Code's definitions. 11 U.S.C. § 101(47). Timely perfection of Hinesburg's contractors' lien related back to the notice of lien recorded prior to the date of the debtor's bankruptcy petition. Hence, Hinesburg's contractors' lien was not subject to the trustee's strong arm powers, rather the lien was excepted from the trustee's avoidance powers under 11 U.S.C. § 546(b). Hinesburg's contractors' lien was also excepted from the trustee's preference powers. 11 U.S.C. § 547(c)(6). Thus, the Bankruptcy Court denied the trustee's and Town's motion to avoid Hinesburg's contractor's lien. Lastly, the Bankruptcy Court found that the state court trustee process against the Town of Colchester (non-debtor owner) was not exempt from the Code's automatic stay because it is a judicial lien against proceeds due to the estate of the debtor. Hence, the Bankruptcy Court granted the trustee's motion to avoid Hinesburg's trustee process. The trustee now appeals the Bankruptcy Court's refusal to avoid Hinesburg's contractor's lien (writ of attachment).

The two issues on appeal are as follows:
1) Is a lien asserted by a contractor who has recorded pre-petition a notice of lien under 9 V.S.A. § 1923 and obtained post-petition an attachment of real estate voidable by the trustee through his strong-arm powers under 11 U.S.C. § 544(a)?
2) Is a lien asserted by a contractor who has recorded pre-petition notice of lien under 9 V.S.A. § 1923 and obtained post-petition an attachment of real estate voidable by the trustee as a preference under 11 U.S.C. § 547(b)?

I affirm the Bankruptcy Court's decision on both issues and hold that Hinesburg's contractor's lien is a statutory lien as defined by the Bankruptcy Code. Hinesburg's timely state court post-petition, pre-judgment writ of attachment perfected his lien. This perfection relates back to a pre-petition date, and therefore the trustee may not avoid this statutory lien under either his strong-arm powers or preference provisions.

## DISCUSSION

I. *Vermont Contractor's Lien is A Statutory Lien*

The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(33) (1986). The Bankruptcy Code defines a "statutory lien" as a

lien arising solely by force of a statute on specified circumstances or conditions, ... but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(47) (1986). A "judicial lien" means a "lien obtained by judgment, levy, sequestration, or other legal or eq-

---

**1.** The definitional paragraphs under 11 U.S.C. § 101 have been redesignated by subsequent amendments to the Bankruptcy Act of 1986. This court uses the paragraph numbers consistent with the parties' briefs. In any event, the redesignation of the paragraph numbers has no impact on the substance of the definitions.

uitable process or proceeding." 11 U.S.C. § 101(32) (1986). *See also* 2 Collier on Bankruptcy ¶ 101.49 (15th ed. 1991) ("a judicial lien arises by virtue of judicial proceedings in the absence of which there would not be such a lien; yet the statutory lien by definition *may arise* without any judicial proceeding." (emphasis added)). In addition, the House and Senate Reports (Bankruptcy Reform Act of 1978) state that "[m]echanics', materialmen's and warehousemen's liens are examples" of statutory liens.[2] H.R.Rep. No. 595, 95th Cong., 1st Sess. 314; S.Rep. No. 989, 95th Cong., 2d Sess. 27, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5813, 6271.

■ Whether or not the lien in the instant case is statutory is purely a matter of state law. While appellant acquiesces that state law controls whether a contractor's lien is a statutory lien or a judicial lien, appellant's only cite is to a bankruptcy court decision in support of its position that such a lien is a judicial lien. Appellant's Brief at 8 (citing *In re Bernstein*, 62 B.R. 545, 550 (Bankr.D.Vt.1986)). To the extent that the trustee relies on dicta in *Bernstein*

that a contractor's lien perfected under 9 V.S.A. § 1923 is a judicial lien, this court disagrees; the nature of the lien under 9 V.S.A. §§ 1921–1928 was not at issue in *Bernstein* because the record below and the representation of counsel was that the lien was judicial.

■ Vermont statutory and decisional law make it clear that a contractor's lien under 9 V.S.A. §§ 1921–1928 is a statutory lien as defined by the Bankruptcy Code. According to Vermont statutes and case law, when a contract is made for improving real property or for furnishing labor or material for improvements, the contractor shall have a lien on the improvements and the land to secure the payment for the improvements or materials. 9 V.S.A. § 1921(a). The lien extends to the portion of the contract price remaining unpaid at the time the property owner receives notice. 9 V.S.A. § 1921(b).[3] The property is charged with a contractor's lien when the claimant files notice of lien by written memorandum with the town clerk. 9 V.S.A. §§ 1921(c), 1923.[4] The contractor

---

**2.** Appellant points out that this list does not include "contractor's liens." Appellant's Brief at 8. This is a specious argument of semantics. "Contractor's lien" is merely Vermont's statutory term for "mechanic's lien" and the two terms are used interchangeably by the Vermont Supreme Court. *See Haigh Lumber Co. v. Drinkwine*, 130 Vt. 120, 126–28, 287 A.2d 560, 564–65 (1972); *Goodro v. Tarkey*, 112 Vt. 212, 215, 22 A.2d 509, 511 (1941). *See also* Black's Law Dictionary 885 (5th ed. 1979): "Mechanic's lien" is "[a] claim created by state statutes for the purpose of securing priority of payment of the price or value of work performed and materials furnished in erecting or repairing a building or other structure, and as such attaches to the land as well as buildings and improvements erected thereon. Such lien covers materialmen, tradesmen, suppliers, and the like, who furnish services, labor, *or materials on construction or improvement* of property."

**3.** 9 V.S.A. § 1921(a) and (b) provide:

(a) When a contract or agreement is made, whether in writing or not, for erecting, repairing, moving or altering improvements to real property or for furnishing labor or material therefor, the person proceeding in pursuance of such contract or agreement shall have a lien upon such improvements and *the lot of* land on which the same stand to secure the payment of the same.

(b) A person who by virtue of a contract or agreement, either in writing or parol, with an agent, contractor or subcontractor of the owner thereof, performs labor or furnishes materials for erecting, repairing, moving or altering such improvements shall have a lien, to secure the payment of the same upon such improvements and the lot of land upon which the same stand, by giving notice in writing to such owner or his or her agent having charge of such property that he or she shall claim a lien for labor or material. Such lien shall extend to the portions of the contract price remaining unpaid at the time such notice is received.

**4.** 9 V.S.A. § 1921(c) provides:

A lien herein provided for shall not continue in force for more than sixty days from the time when payment became due for the last of such labor performed or materials furnished unless a notice of such lien is filed in the office of the town clerk as hereinafter provided.

9 V.S.A. § 1923 provides:

A person claiming a lien under section 1921 of this title, shall file for record in the clerk's office of the town where such real estate is situated, a written memorandum, signed by him, asserting his claim, which shall charge such real estate with such lien as of the visible commencement of work or delivery of materi-

lienor must obtain a writ of attachment within three months of filing the written memorandum to perfect his lien. 9 V.S.A. § 1924.

Vermont decisional law interpreting sections 1921–1928 of Title 9 of Vermont statutes has held that "the right to acquire and enforce [mechanic's] liens is a creature of and dependent on statute." *Goodro v. Tarkey,* 112 Vt. 212, 214, 22 A.2d 509, 510 (1941) (citing *Baldwin v. Spear Bros.,* 79 Vt. 43, 50, 64 A. 235 (1905)). Once the contractor lienor has recorded its notice in the town clerk's office, he has a remedy available similar to a mortgage:

> The evident purpose and intent of the law was to give to the party who had filed a proper memorandum in the proper office all and the same rights as a mortgage would give him, executed at the time of filing the memorandum. The remedy provided is as of a mortgage.

*Hinckley & Egery Iron Co. v. James,* 51 Vt. 240, 244 (1878).

I agree with the Bankruptcy Court that the mere fact that Vermont's statutory lien scheme requires resort to the judicial process—namely, a writ of attachment—to perfect the lien does not convert the statutory lien into a judicial lien. Under § 1923, a lienor must record a written memorandum asserting his claim in the town clerk's office. The filing of the written memorandum charges the real estate with the lien "as of the visible commencement of work or delivery of material." 9 V.S.A. § 1923. Hence, a Vermont statutory mechanic's lien *exists* the moment the work on the property begins. Whereas, "a mechanic's lien takes *effect* when the requisite memorandum is filed in the proper office," and the owner and the world have notice that the property stands charged with the payment of bills of the creditor. *Haigh Lumber Co. v. Drinkwine,* 130 Vt. at 128, 287 A.2d at 564 (1972) (emphasis added) (citing *Hinckley & Egery Iron Co.,* 51 Vt. at 244). Up to this point, the contractor lienor does not need to resort to any judicial process to obtain his lien on the property.

While a contractor's lien *arises* and *exists* independently of any judicial process, if the lienholder wants the lien to remain in effect, he must, within three months from the filing of the memorandum or from when payment was due, attach the property by commencing a lawsuit against the owner to enforce the lien. 9 V.S.A. § 1924. Obtaining a judicial order for a writ of attachment within the three month period prescribed under § 1924 perfects the lien and "is a requisite to *preserving* the statutory lien." *Filter Equip. Co., Inc. v. I.B.M. Corp.,* 142 Vt. 499, 503, 458 A.2d 1091, 1092 (1983) (emphasis added). The failure to perfect a recorded notice of lien by obtaining a writ of attachment means the lien is lost. *Goodro,* 112 Vt. at 216, 22 A.2d at 511.

Appellant argues that since "judicial process is a precondition to the finality of a contractor's lien," it "is inchoate until a final judgment has been rendered" and therefore it is a judicial lien. Appellant's Brief at 8–9. This argument lacks merit; the Bankruptcy Code categorizes a lien by the way it is *established,* not by how it is preserved. A statutory lien is a lien "arising" because of "specified circumstances or conditions" laid out in the statute. 11 U.S.C. § 101(47). Characterizing a contractor's lien as "inchoate" before a writ of attachment is obtained does not change the fact that it exists. "The result of a judicial process does not affect the statutory being of a contractors' lien. The obtaining of a writ of attachment to perfect a statutory lien, although judicial in nature, is just another statutory step from inchoateness to perfection." *Town of Colchester v. Hinesburg Sand and Gravel, Inc. (In re APC Construction, Inc.,* 112 B.R. 89 (Bankr.D.Vt.1990).

## II. The Trustee May Not Avoid Hinesburg's Statutory Lien Through its Strong Arm Powers (§ 544(a)) or as a Preference (§ 547(b))

▮ The money due from the Town of Colchester to APC is property of the debt-

al to the extent and subject to the exceptions provided in sections 1921 and 1922 of this title. Several such liens, asserted as afore-

said, shall be paid pro rata, if the sum due or to become due form the owner thereof is not sufficient to pay the same in full.

or's bankruptcy estate. 11 U.S.C. § 541(a)(1); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Under 11 U.S.C. § 544(a), the "strong arm clause," the trustee acquires the status of an existing or hypothetical lien creditor against all unencumbered property of the estate as of the date of the bankrupt's petition. *Lewis v. Manufacturers National Bank of Detroit*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). Once the trustee assumes the status of a hypothetical lien creditor under § 544, state law is used to determine what a lien creditor's priorities and rights are. *Kors, Inc. v. Howard Bank*, 819 F.2d 19, 22 (2d Cir.1987). This court must look to the interaction of bankruptcy and Vermont law to determine what is the effect of the intervention of the trustee's hypothetical judgment lien on March 10, 1989, between Hinesburg's notice of lien, 9 V.S.A. § 1923, on January 24, 1989, and Hinesburg's state court writ of attachment, 9 V.S.A. § 1924, on March 28, 1989.

■ Under 11 U.S.C. § 545(2), the trustee in bankruptcy may avoid a statutory lien on the property of the debtor if the lien is not perfected or enforceable at the time of the commencement of the bankruptcy case. However, the bankruptcy laws provide exceptions to or "limitations on" the trustee's avoidance powers. 11 U.S.C. § 546(b) states:

The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not commenced before the date of the filing of the petition, such interest in such property shall be perfected by no-

tice within the time fixed by such law for such seizure or commencement.

The legislative history of this section explains that "[t]he phrase 'generally applicable law' relates to those provisions of applicable law that apply both in bankruptcy cases and outside of bankruptcy cases." H.R.Rep. No. 595, 95th Cong., 1st Sess. 371; S.Rep. No. 989, 95th Cong., 2d Sess. 86, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5872, 6327.

Consequently, if the holder of a statutory lien that the trustee could avoid under § 545(2) still has, as of the date of the filing of the petition, under applicable non-bankruptcy law, the opportunity to perfect his lien against an intervening interest holder, then holder of the statutory lien may perfect his interest, within the time allowed by the applicable law, against the trustee notwithstanding the intervention of the bankruptcy case. The rights granted to the holder of a statutory lien by section 546(b) only prevail against the trustee if the holder perfects pursuant to applicable law and that perfection relates back to a time prior to the filing of the petition.

4 Collier on Bankruptcy ¶ 545.04 (15th ed. 1991). It is clear that the purpose of § 546(b) is "to protect ... those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." [5] H.R. No. 595 at 371, 1978 U.S.Code Cong. & Admin.News 6327.

The questions remaining, then, are whether Hinesburg timely perfected its contractors' lien under Vermont law and whether the perfection relates back to a date that is pre-petition. This court holds that Hinesburg' timely perfection of its contractors' lien is retroactive and therefore met the statutory lien exception (11 U.S.C. § 546(b)) to the trustee's avoiding powers under 11 U.S.C. § 545(2). Hinesburg recorded a notice of lien pursuant to 9 V.S.A. § 1923 on January 24, 1989. As we discussed above, this court held that Hinesburg's lien was a statutory lien that was

5. The Bankruptcy Reform Act of 1978 also provides an exception from the automatic stay to permit such perfection under 11 U.S.C. § 546(b). 11 U.S.C. § 362(b)(3).

created as of the date he filed notice of the lien in the town clerk's office. Under Vermont law, a lienholder must perfect the lien by obtaining a writ of attachment within three months. 9 V.S.A. § 1924; *Filter Equip.*, 142 Vt. at 503, 458 A.2d at 1093 ("perfecting an attachment within the statutory period [is required] to continue the effectiveness of the lien"). In the instance case, Hinesburg obtained a writ of attachment against the Town's improved property on March 28, 1989, which is well within the statutory time limit of three months. Perfection by obtaining a writ of attachment within the statutory period pursuant to § 1924, is required to *"continue* the effectiveness of the lien memorandum as filed." *Filter Equip. Co.*, 142 Vt. at 503, 458 A.2d at 1093. If the plaintiff obtains a judgment, it has the force of a mortgage, and a right of foreclosure for nonpayment, of "the amount due ... from the time of the visible commencement of work or delivery of materials." 9 V.S.A. § 1925; *Filter,* 142 Vt. at 502, 458 A.2d at 1092. Hence, under Vermont law, the perfected contractors' lien will relate back to the time of recording of a notice of lien and the "visible commencement of work or delivery of material." 9 V.S.A. § 1923. Since Hinesburg's timely post-petition perfection of its contractor's lien relates back to a pre-petition date, the trustee's strong arm powers under § 544 cannot be used to avoid Hinesburg's lien.

■ In addition, Hinesburg's statutory lien cannot be avoided as a preference under 11 U.S.C. § 547(b). Appellant argues that Hinesburg's lien is voidable as a preference for two reasons. First, the lien was recorded within ninety days of the debtor's petition. 11 U.S.C. § 547(b)(4)(A). Second, the lien was a judicial lien and therefore did not come within the exception for statutory liens to the trustee's preference powers. 11 U.S.C. § 547(c)(6). Section 547(c)(6) provides:

(c) The trustee may not avoid under this section a transfer—

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title.

The purpose of this exception to the trustee's power to avoid a transfer as a preference is to protect statutory liens that have been validated under section 545 from preference attack.

CONCLUSION

Hinesburg's contractor's lien is a statutory lien under the Bankruptcy Reform Act of 1978. Under Vermont law, a contractor's lien exists when a contractor provides or supplies material to real property and gives notice of a claimed lien to the owner. The contractor's lien under Vermont law may be perfected by obtaining a timely state court pre-judgment writ of attachment, and perfection relates back to the time the lien was established. The Bankruptcy Reform Act allows a statutory lien to be perfected post-petition; timely post-petition perfection of a statutory lien exempts the lienholder from a trustee's avoidance powers under the lien avoidance provisions or the preference provisions. 11 U.S.C. §§ 546(b) and 547(c)(6).

AFFIRMED.